UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Kevin Alan Moore,

       Petitioner,

  vs.                        REPORT AND RECOMMENDATION

James N. Cross, Lisa J.
Hollinsworth, Michael Jones,
and Tracy Kilsdonk,

       Respondents.           Civ. No. 05-2875 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion for a Preliminary or Permanent Injunction.

The Plaintiff, who is an inmate at the Federal Correctional Institution at Sandstone, Minnesota ("FCI-Sandstone"), commenced this action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that his confinement at FCI-Sandstone, as opposed to the Federal Correctional Institution at Milan, Michigan ("FCI-Milan"),  imposes a substantial

burden on the free exercise of his religion -- namely Catholicism -- and constitutes a violation of his rights under Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Title 42 U.S.C. §2000cc-1, et seq., as well as the First and Fifth Amendments to the United States Constitution.   Specifically, the Plaintiff contends that his incarceration at FCI-Sandstone significantly burdens his ability to honor his mother -- as is required by the Fourth Commandment -- which he contends is a central tenant of his Catholic faith.   According to the Plaintiff, his mother presently resides in Milford, Indiana, which is approximately 598 miles away from FCI-Sandstone, and that his mother's failing health, and her limited financial resources, prevent her from traveling such a long distance.   The Plaintiff further alleges that FCI-Milan has the same security classification as FCI-Sandstone, and that it is only 180 miles from his mother's residence.

The Plaintiff now seeks preliminary, or permanent injunctive relief, in the form of an Order directing the Federal Bureau of Prisons to transfer the Plaintiff from FCI-Sandstone to FCI-Milan.   Rule 65, Federal Rules of Civil Procedure, allows Courts to grant injunctive relief -- in the form of Temporary Restraining Orders -- but only upon a showing that:

> (1)   it clearly appears from specific facts shown by
> affidavit or by the verified complaint that immediate and
> irreparable injury, loss, or damage will result to the
> applicant before the adverse party or that party's attorney
> can be heard in opposition, and (2) the applicant's attorney
> certifies to the court in writing the efforts, if any, which
> have been made to give the notice and the reasons
> supporting the claim that notice should not be required.

Rule 65(b), Federal Rules of Civil Procedure.

Alternatively, Courts can issue Preliminary Injunctions and, while  Rule 65 does not

expressly enumerate the requisite elements of proof which would warrant the issuance

of a Preliminary Injunction, the Courts have listed the critical showings as follows:

> 1)   irreparable injury to the movant;
>
> 2)   the balance between the injury and the harm that the
> preliminary injunction will cause to the other parties;
>
> 3)   the movant's probability of success on the merits;
> and
>
> 4)   the public interest.

Stuart Hall Co.,Inc. v. Ampad Corp., 51 F.3d 780, 783 n.3 (8th Cir. 1995) citing Calvin
Klein Cosmetics corp. v. Lenox Lab., 815 F.2d 500, 503 (8th Cir. 1987); NSP v.
Prairie Island, 991 F.2d 458, 463 (8th Cir. 1993), citing Dataphase Systems, Inc. v. C
L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981); see also, Roberts v. Van Buren
Public Schools, 731 F.2d 523 (8th Cir. 1984); Ferry-Morse Seed Co. v. Food Corn,
Inc., 729 F.2d 589 (8th Cir. 1984).

Despite such clear prerequisites to the award of equitable relief, the Plaintiff has failed

to demonstrate, by Affidavit or by Verified or Certified Complaint, that he will suffer

any immediate and irreparable injury, loss, or damage, if the Court were not to immediately issue an Order transferring him to FCI-Milan.  Instead, the Plaintiff urges that irreparable injury should be assumed because his claim asserts a violation of the First Amendment.

"In the context of First Amendment cases, courts normally assume irreparable injury because '[t]he loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury.'" Wickersham v. City of Columbia, Missouri, 371 F. Supp.2d 1061, 1075 (W. D. Mo. 2005), quoting Elrod v. Burns, 427 U.S. 347, 373 (1976).  However, "[u]nder the Eighth Circuit's interpretation of Elrod, irreparable harm exists '[i]f [the plaintiffs] **are correct and their First Amendment rights have been violated.**'" Education Minnesota Lakeville v. Independent School District No. 194, 341 F. Supp.2d 1070, 1080 (D. Minn. 2004)[emphasis in original], quoting Marcus v. Iowa Public Television, 97 F.3d 1137, 1140-41 (8th Cir. 1996).  Accordingly, in determining whether irreparable harm has been established, and whether a preliminary injunction is warranted, we focus our attention on the likelihood that the Plaintiff will succeed on the merits of his First Amendment claim.  See, Wickersham v. City of Columbia, Missouri, supra at 1075 ("[B]ecause of the inherent public interest in free speech and the threat of irreparable injury if speech is

- 4 -

suppressed, courts rarely focus on the three latter Dataphase factors; instead they look primarily to whether the party seeking the preliminary injunction is likely to succeed on the merits.").

When seeking a Preliminary Injunction, the burden on the movant "'is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief [he] would obtain after a trial on the merits.'" Sanborn Mfg. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993), quoting Dakota Indus., Inc. v. Ever Best Ltd., 944 F.2d 438, 440 (8th Cir. 1993). In support of his argument on the merits, the Plaintiff principally relies on our Court of Appeals' holding in Murphy v. Missouri Department of Corrections, 372 F.3d 979 (8th Cir. 2004). In Murphy, a prisoner who claimed to be a practicing member of the Christian Separatist Church Society -- a religious group that holds as a central tenant the belief that its members must all be Caucasian because they are uniquely blessed by God and must separate themselves from non-Caucasian persons -- alleged that prison officials had violated his rights under the First Amendment, the Fourteenth Amendment's Equal Protection clause, and the RLUIPA, by denying him communal worship, religious funding, institutional television time for religious videos, and uncensored access to a religious publication. Id. at 982. As is pertinent to this case, the Court

- 5 -

held that the restrictions on the plaintiff's worship did not violate his rights under the free exercise clause of the First Amendment, as a matter of law, but that questions of fact precluded Summary Judgment with respect to the plaintiff's claim under RLUIPA, since a free exercise claim under the RLUIPA "encompass[es] a higher standard of review than that which applies to constitutional free exercise claims." Id. at 986, 989.

It is settled law that prisoners do not automatically forfeit all of their constitutionally protected freedoms upon entering a correctional facility. See, Bell v. Wolfish, 441 U.S. 520, 545 (1979); Pell v. Procunier, 417 U.S. 817, 822 (1974). At the same time, "'[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.'" Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir. 1996), cert. denied, 519 U.S. 874 (1996), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977). The administration of a prison "requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government" which, even in the context of a constitutional challenge, raises

"separation of powers concerns [that] counsel a policy of judicial restraint." <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987).

When an inmate claims that prison officials have interfered with his constitutional right to exercise his religious beliefs, the Court must apply a "'reasonableness test'," which is "'less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" <u>Hamilton v. Schriro</u>, supra at 1550, quoting <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987). Prison officials need not show that they have chosen the least restrictive means of furthering a compelling governmental interest; they must only show that they have chosen a "reasonable" means of furthering a "'legitimate penalogical interest'." <u>Id.</u>, quoting <u>O'Lone v. Estate of Shabazz</u>, supra at 89; see also, <u>Jolly v. Coughlin</u>, 76 F.3d 468, 475 (2nd Cir. 1996)("[T]he <u>O'Lone</u> 'reasonableness' test continues to have validity for claims brought directly under the First Amendment"). "The burden, moreover, is not on the [Government] to prove the validity of prison regulations but on the prisoner to disprove it." <u>Overton v. Bazetta</u>, 539 U.S. 126, 132 (2003).

Given these precepts, we find that the Plaintiff's likelihood of success on his First Amendment claim does not weigh in favor of a preliminary injunction. While we cannot determine, at this time, the reasons that the Defendants have denied the

Plaintiff's request to be transferred, "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise," McCune v. Lile, 536 U.S. 24, 39 (2002), citing Meachum v. Fano, 427 U.S. 215, 225 (1976); see, Olim v. Wakinekona, 461 U.S. 238, 245 (1983)("Just as a prisoner has no justifiable expectation that he will be incarcerated in any particular prison within the State, he has no justifiable expectation that he will be incarcerated in any particular State."), and "[p]rison administrators are afforded 'extremely broad' latitude in making transfer decisions." Shaheed-Muhammad v. Dipaolo, 393 F. Supp.2d 80, 105 (D. Mass. 2005); see, Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999)("Prison authorities have a great deal of discretion in running their institutions, and such discretion normally outweighs any interest that an individual prisoner may have in remaining housed in a particular prison."), citing Sanders v. St. Louis County, 724 F.2d 665, 668 (8th Cir. 1983); Miller v. King, 384 F.3d 1248, 1267, n. 21 (11th Cir. 2004); Salahuddin v. Perez, 2006 WL 266574 at *6 (S.D. N.Y., February 2, 2006).

However, much of the Plaintiff's argument focuses on the Defendants' alleged violation of Section 3 of the RLUIPA, which requires that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution * * * even if the burden results from a rule of

general applicability, unless the government demonstrates
that imposition of the burden on that person –

(1) is in furtherance of a compelling
governmental interest; and

(2) is the least restrictive means of furthering
that compelling governmental interest.

Title 42 U.S.C. §2000cc-1(a).

"To constitute a substantial burden, the government policy or actions * * * must 'significantly inhibit or constrain conduct or expression that manifests some central tenant of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.'"  Murphy v. Missouri Department of Corrections, supra at 988, quoting Wier v. Nix, 114 F.3d 817 (8th Cir. 1997)(applying same standard from the Religious Freedoms Restoration Act).

Relying on these principles, the Plaintiff urges that "[f]ace to face discussion and study about how biblical principles are to be applied in life, family prayer, family worship and the maintenance, development and nurturing of family relationships are sincerely held tenants of [his] Catholic Faith," and that his incarceration at FCI-Sandstone, as opposed to FCI-Milan, "significantly burdens his ability to honor his

- 9 -

mother as mandated by the Fourth Commandment." Plaintiff's Motion for Preliminary, Mandatory or Permanent Injunctive Relief, at p. 6, Docket No. 8.

However, even assuming that such a contention is sufficient to establish a substantial burden, we nonetheless find that the Plaintiff has failed to establish "a substantial probability of success on the merits" of his RLUIPA claim. See, Northland Ins. Co. v. Blaylock, 115 F. Supp.2d 1108, 1117 (D. Minn. 2000), citing Dataphase Systems, Inc. v. C L Systems, Inc., supra at 114. As we previously noted, prison officials are afforded broad discretion in determining the location of a prisoner's confinement, see, McCune v. Lile, supra at 39; Olim v. Wakinekona, supra at 245 Meachum v. Fano, supra at 225, and both the United States Supreme Court, and our Court of Appeals, have recognized that, in applying the more stringent compelling government interest/least restrictive alternative test, Congress anticipated that Courts would continue to give "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Cutter v. Wilkinson, 544 U.S. 709, ---, 125 S.Ct. 2113, 2123 (2005), quoting 146 Cong. Rec. S7774, S7775 (July, 27, 2000)(Joint Statement of Senator Hatch and Senator Kennedy on RLUIPA), quoting, in turn, S. Rep. No. 103-111, p.

10 (1993), reprinted in U.S. Code Cong. & Admin. News, 1993, pp. 1892, 1899, and

1900; Murphy v. Missouri Department of Corrections, supra at 988.

Therefore, we conclude that it is highly unlikely that, in enacting the RLUIPA,

Congress intended to interfere with the discretion of prison administrators in

determining the location of a prisoner's confinement.  Cf., Ragland v. Angelone, ---

F. Supp.2d ----, 2006 WL 679773 at *8 (W.D. Va., March 14, 2006)("Allowing

inmates with a professed religious need for a transfer to push to the head of the

waiting line, without requiring that they meet other transfer criteria, would constitute

state favoritism of certain religions and unjustifiably punish inmates seeking transfers

for other reasons.").  Accordingly, we find that the Plaintiff has failed to demonstrate

a substantial likelihood of success on the merits of his RLUIPA claim.

Therefore, since we find that the likelihood that the Plaintiff will succeed on the

merits of his claims does not weigh in favor of his request for a preliminary

injunction, we also find that the Plaintiff has failed to establish irreparable harm.  See,

Education Minnesota Lakeville v. Independent School District No. 194, supra at 1080

("[B]ecause Plaintiffs have not shown that their First Amendment rights have been

violated, * * *, the Court cannot say that they have 'demonstrate[d] a sufficient threat

of irreparable harm.'"); cf., Laughlin v. Norris, 1999 WL 314121 at *1 (8th Cir., May

17, 1999)(finding that District Court did not abuse its discretion in denying a prisoner's Motion for a temporary injunction where the prisoner failed to demonstrate probability of succeeding on the merits).  Furthermore, given the Plaintiff's failure to establish a First Amendment or RLUIPA violation, we are not persuaded that any harm, which might result from the Plaintiff's continued detention at FCI-Sandstone, substantially outweighs society's interest in the effective administration of its penal systems.  Therefore, we recommend that the Plaintiff's Motion for a Preliminary  or Permanent Injunction be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Plaintiff's Motion for a Preliminary or Permanent Injunction [Docket No. 8] be denied.

Dated: March 21, 2006                    *s/Raymond L. Erickson*
                                         Raymond L. Erickson
                                         CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than April 7, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than April 7, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.