UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Kevin Alan Moore,

        Plaintiff,

vs.                      REPORT AND RECOMMENDATION

James N. Cross, Lisa J.
Hollingsworth, Michael
Jones, and Tracy Kilsdonk,

        Defendants.        Civ. No. 05-2875 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.

For these purposes, the Plaintiff appears pro se, and the Defendants appear by Mary Jo Madigan, Assistant United States Attorney General.

For reasons which follow, we recommend that the Defendants' Motion to Dismiss or, alternatively, for Summary Judgment, be granted, and that the Plaintiff's Complaint be dismissed.

## II.  Factual and Procedural Background

The Plaintiff, who is an inmate at the Federal Correctional Institution, in Sandstone, Minnesota ("FCI-Sandstone"), commenced this action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that his confinement at FCI-Sandstone, as opposed to the Federal Correctional Institution, in Milan, Michigan ("FCI-Milan"), imposes a substantial burden on the free exercise of his religion -- namely Catholicism -- and constitutes a violation of his rights under Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Title 42 U.S.C. §2000cc-1, et seq., as well as a violation of the First and Fifth Amendments to the United States Constitution.

Specifically, the Plaintiff contends that his incarceration at FCI-Sandstone significantly burdens his ability to honor his mother -- as is required by the Fourth Commandment -- which, he contends, is a central tenant of his Catholic faith. According to the Plaintiff, his mother currently resides in Milford, Indiana, which is approximately 598 miles distant from FCI-Sandstone, and his mother's failing health, together with her limited financial resources, prevent her from traveling such a long distance to visit him.  The Plaintiff further contends that FCI-Milan has the same

security classification as FCI-Sandstone, and that it is only 180 miles from his mother's residence.

The Plaintiff is currently serving a 400-month sentence, with five (5) years supervised release, for Conspiracy to Commit Murder and Murder, in violation of Title 18 U.S.C. §§1111 and 1117, with a projected release date of May 9, 2023, via good conduct time release. See, Declaration of Ann C. Norenberg, Docket No. 21-2, at ¶3. The Plaintiff was originally designated to the Federal Correctional Institution in Florence, Colorado, on February 24, 1995, to begin the service of his Federal sentence. See, Exhibits in Support of Defendants' Memorandum, Docket No. 21-4. On April 28, 2003, after having his security level reduced from Medium to Low, the Plaintiff requested a transfer to FCI-Sandstone, FCI-Milan, the Federal Medical Center, in Rochester, Minnesota, "or any appropriate low security level facility at the Region's discretion." Id. As his rationale for transfer, the Plaintiff expressed an interest in the vocational programs offered at those facilities, which would "enable him to learn a marketable trade for his release." Id. On May 23, 2003, the Plaintiff was redesignated to FCI-Sandstone, based on his security needs, population management concerns, and the fact that FCI-Sandstone was less than 500 miles away from his proposed release residence in Milford, Indiana. Id.

- 3 -

The Plaintiff brings this action against Lisa J. Hollingsworth ("Hollingsworth"), and James N. Cross ("Cross"), who are, respectively, the former and present Wardens of FCI-Sandstone; Tracy Kilsdonk ("Kilsdonk"), who is a former Unit Manager of FCI-Sandstone; and Michael Jones ("Jones"), who is a Case Manager of FCI-Sandstone, in their official and individual capacities. The Defendants move to dismiss the Plaintiff's Complaint or, in the alternative, for Summary Judgment, arguing that the Court lacks personal jurisdiction over them in their individual capacities, as none of the Defendants was properly served; that the Defendants are entitled to qualified immunity; and that RLUIPA does not apply to the Plaintiff, as a Federal prisoner.

III.  Discussion

A.  Standard of Review.  "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.23d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. Maki v. Allete, Inc., supra at 742.  "A complaint shall not

be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the

pleadings -- without transforming the Motion into one for Summary Judgment. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).

Here, the Plaintiff's Complaint is verified and, to that extent, constitutes a sworn statement, and since we have considered the averments in that Complaint, as well as the Affidavits submitted by the Defendants, we consider the Defendants' Motion to be one for Summary Judgment.

B.    Legal Analysis.

1.    Personal Jurisdiction. The Defendants acknowledge proper service in their official capacities, but predicate their Motion to Dismiss the claims against them in their individual capacities on their assertion that the Plaintiff failed to effect sufficient service of process. See, Rule 12(b)(5), Federal Rules of Civil Procedure. Proper service of process is necessary because, "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant." Printed Media Services, Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993), citing Dodco, Inc. v. American Bonding Co., 7 F.3d 1387, 1388 (8th Cir. 1993); see, Murphy Bros., Inc. v. Michetti

<u>Pipe Stringing</u>, 526 U.S. 344, 350 (1999); <u>Sieg v. Karnes</u>, 693 F.2d 803, 807 (8th Cir. 1982); <u>Personalized Brokerage Services, LLC v. Lucius</u>, 2006 WL 2975308 at *1 (D. Minn., October 16, 2006).

Service of process can be effected, under the Federal Rules, "pursuant to the law of the State in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." <u>Rule 4(e)(1), Federal Rules of Civil Procedure</u>. In turn, under Minnesota law, "a plaintiff may effectively serve a summons and complaint by two methods: personally under Minn.R.Civ.P. 4.03 or acknowledgment by mail under Minn.R.Civ.P. 4.05." <u>Turek v. ASP of Moorhead, Inc.</u>, 618 N.W.2d 609, 611 (Minn. App. 2000), rev. denied  (Minn., January 26, 2001).  However, "[s]ervice of process in a manner not authorized by the rule is ineffective service." <u>Id.</u>, quoting <u>Lundgren v. Green</u>, 592 N.W.2d 888, 890 (Minn. App. 1999), rev. denied (Minn., July 28, 1999), quoting in turn, <u>Tullis v. Federated Mutual Ins. Co.</u>, 570 N.W.2d 309, 311 (Minn. 1997).

As to service by mail, Rule 4.05, Minnesota Rules of Civil Procedure, provides as follows:

> In any action service may be made by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 22 and a return envelope, postage prepaid, addressed to the sender. If acknowledgment of service under this rule is not received by the sender within the time defendant is required by these rules to serve an answer, service shall be ineffectual.

Minnesota Courts have applied the requirements of this Rule stringently, such that, "if the acknowledgment form is not returned, the formal requirements of mail service are not met and personal service must be obtained." Coons v. St. Paul Cos., 486 N.W.2d 771, 774 (Minn. App. 1992), quoting Young v. Mt. Hawley Ins. Co., 864 F.2d 81, 82 (8th Cir. 1988)(interpreting former Rule 4(c)(2)(C)(ii), Federal Rules of Civil Procedure); see, Turek v. ASP of Moorhead, Inc., supra at 611 ("According to the plain language of this rule service is ineffectual if the sender does not receive the acknowledgment within 20 days."); see also, Gulley v. Mayo Foundation, 886 F.2d. 161, 165 (8th Cir. 1989)(finding service ineffectual where the acknowledgment was received by the sender, but not within the twenty day time period).

"Whether [the defendant] has actual notice of the lawsuit and [the plaintiff] substantially complied with the rules for service of process is irrelevant, because the actual notice exception applies only to cases involving substitute services at a

- 8 -

defendant's usual place of abode." Turek v. ASP of Moorhead, Inc., supra at 612,

citing Thiele v. Stich, 425 N.W.2d 580, 584 (Minn. 1988); Ryan Contracting, Inc. v.

JAG Investments, Inc., 634 N.W.2d 176, 182 (Minn. 2001), citing Tullis v. Federated

Mut. Ins. Co., supra at 311; Coons v. St. Paul Cos., supra at 775.

Here, there is no Record that any of the Defendants were even provided with

Acknowledgment of Service forms, much less that they returned those forms to the

Plaintiff within the twenty (20) day period, as is required for effective service of

process. Rather, the Record reflects that the Plaintiff attempted to serve Kilsdonk by

mailing the Complaint and an "Unendorsed" copy of the Summons by certified mail

to FCI-Sandstone, which were subsequently returned to the Plaintiff as undeliverable.

See, Plaintiff's Memorandum, Docket No. 29, at p. 7. Defendants Hollingsworth,

Cross, and Jones, were each served with a Complaint on January 30, 2006, along with

an "Unendorsed" copy of the Summons, which the Plaintiff subsequently

supplemented by serving a separate copy of the "Endorsed" Summons. Id., at p. 6.

On March 2, 2006, the Plaintiff filed a Proof of Completion of Service with the Court,

see, Docket No. 11, but none of the Defendants ever received an acknowledgment of

service form, or a prepaid return envelope, and consequently, none of them returned

an acknowledgment of service to the Plaintiff. Accordingly, the Plaintiff's service of

process upon the Defendants, in their individual capacities, was ineffectual under Rule 4.05, Minnesota Rules of Civil Procedure.

Despite these failings, the Plaintiff urges that we find that "his failure to comply with Fed. R. Civ. P. does not require dismissal of the charges brought against the Defendant[]s in their personal capacity." Memorandum in Opposition, supra at p. 10. In making his argument, the Plaintiff notes that his status, as a pro se litigant, entitles him to certain leniencies in the prosecution of his case. While pro se pleadings are to be construed liberally, we cannot ignore the requirement that the Plaintiff effect proper service of process on the Defendants. See, Hinz v. Washington Mutual Home Loans, 2004 WL 729239 at *2 (D. Minn., April 2, 2004). In Hinz, the Court addressed a pro se litigant's failure to serve process in accordance with the Federal Rules, observing as follows:

> The Court recognizes that the [plaintiffs] are proceeding pro se in this matter, and may therefore not fully appreciate the procedural requirements of bringing a lawsuit in federal court. However, the Court is obligated to uphold the rights and protections afforded Defendants when those Defendants are brought before this Court.

Accordingly, the Plaintiff's status as a pro se litigant, along with his good faith attempts to comply with the Rules, do not excuse him from adhering to the procedural requirements for service of process.

The Plaintiff's request, that we overlook any deficiencies in his service of process, because the Defendants had actual notice of the lawsuit, is similarly without merit. Notably, under both State, and Federal law, "actual notice" does not discharge the Plaintiff of his duty to effectuate proper service. See, Sieg v. Karnes, supra at 807 (finding that Federal Court lacked personal jurisdiction over improperly served defendant despite actual notice); Willis v. Tarasen, 2005 WL 1705839 at * 2 (D. Minn., July 11, 2005)(same); Turek v. ASP of Moorhead, Inc., supra at 612; Coons v. St. Paul Cos., supra at 775.

Lastly, while an objection to service of process may be waived, if not raised at the first available opportunity, see, Rule 12(h), Federal Rules of Civil Procedure, the Defendants have challenged the effectiveness of Plaintiff's service of process, in their Motion to Dismiss, as subsequently documented in their Memorandum in Support of that Motion. See, Docket No. 20. Having found that the Plaintiff has failed to effectuate service of process, under the applicable Rules of Federal and State Civil Procedure, we find that we are without personal jurisdiction over the Defendants in

their individual capacity.   Although we recommend that all claims against the

Defendants, in their individual capacities be dismissed, without prejudice, our analysis

proceeds.[1]

        2.    The Plaintiff's Constitutional Claims.

        a.    Sovereign Immunity.[2]  As a sovereign power, the United

States may be sued only to the extent that it has consented to suit by Statute.   United

States Dept. of Energy v. Ohio, 503 U.S. 607, 615 (1992); United States v. Mitchell,

445 U.S. 535, 538 (1980).  "Sovereign immunity is a jurisdictional doctrine, and the

---

[1]In our Report of June 16, 2006, in which we recommended that the Plaintiff's Motion for the Entry of Default Judgment as to the Defendants be denied, we expressly noted the "we entertain some doubt as to the propriety of service upon the Defendants, as individuals," citing Rule 4(i)(1)(B), Federal Rules of Civil Procedure. See, Docket No. 25, at p. 2 n. 1.  Thereafter, our Report and Recommendation was adopted by the District Court, the Honorable James M. Rosenbaum, Chief Judge, presiding.  Nonetheless, the Plaintiff made no subsequent effort to assure that his service of process on the Defendants, in their individual capacities, was legally effective.

[2]Although the Defendants failed to raise the defense of sovereign immunity in their Memorandum, see, Docket No. 20, our Court of Appeals has found that sovereign immunity need not be pled as an affirmative defense, but rather, is "a jurisdictional threshold matter" that can be raised for the first time on appeal.  Hagen v. Sisseton-Wahpeton Community College, 205 F.3d 1040, 1043-44 (8th Cir. 2000), quoting Harmon Indus., Inc. v. Browner, 191 F.3d 894, 903 (8th Cir. 1999).  As the Defendants would thus be able to raise this defense in subsequent Hearings, and since we have an independent duty to assure our jurisdiction over the subject matter of the claims before us, we will consider the issue of sovereign immunity at this time.

terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Brown v. United States, 151 F.3d 800, 803 (8th Cir. 1998), quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994); see also, United States v. Mottaz, 476 U.S. 834, 841 (1986)("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."), citing United States v. Sherwood, 312 U.S. 584, 586 (1941).

Waivers of sovereign immunity must be strictly construed in favor of the sovereign, and may not be enlarged beyond what the language of the waiver requires. United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992); see also, Bowen v. City of New York, 476 U.S. 467, 479 (1986); Block v. North Dakota, 461 U.S. 273, 287 (1983). Thus, the doctrine of sovereign immunity holds that the United States, and its agencies and instrumentalities -- including the Federal Bureau of Prisons ("BOP") -- are immune from suit, unless a waiver of such immunity has been "expressed unequivocally" by Congress. Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991); United States v. Dalm, 494 U.S. 596, 608 (1990); United States v. Mitchell, supra at 538; Kaffenberger v. United States, 314 F.3d 944, 950 (8th Cir. 2003).

Congress has not waived the sovereign immunity of the United States government, or its agencies, for claims that their employees have violated the Constitution. See, Bivens v. Six Unknown Named Agents, supra at 410; Searcy v. Donelson, 204 F.3d 797, 798 (8th Cir. 2000); Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998)("It is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity."). A Federal prisoner in a BOP facility may bring a Bivens claim against an individual officer, subject to the defense of qualified immunity, but "the prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP * * * with respect to the alleged constitutional deprivation, his only remedy lies against the individual." Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); see also, Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998).

Here, to the extent that the Plaintiff sues the individual Defendants in their official capacities, the United States is the real party in interest, and sovereign immunity bars those claims. See, Kentucky v. Graham, 473 U.S. 159, 166 (1985) (suits against public officials acting in their official capacities should be treated as suits against the public entity); Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006)("A suit against a public officer in his official capacity is actually a suit against

the entity for which the official is an agent.").  As a result, the Plaintiff's <u>Bivens</u> claims against the individual Defendants, in their official capacities, should be dismissed for lack of subject matter jurisdiction.

        b.    <u>Qualified Immunity</u>.  When qualified immunity is asserted in a <u>Bivens</u>/Section 1983 action, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *." <u>Jones v. Shields</u>, 207 F.3d 491, 494 (8th Cir. 2000), quoting <u>Wilson v. Layne</u>, 526 U.S. 603 (1999) [citations omitted].  "Only then do we ask whether that right was clearly established at the time of the alleged violation." <u>Id.</u>; see, <u>Coonts v. Potts</u>, 316 F.3d 745, 750 (8th Cir. 2003), citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991).  Here, we find no constitutional violation but, nonetheless, we proceed to address the qualified immunity question in the interests of completeness.

        a.    <u>The First Amendment Claim</u>.  It is settled law that prisoners do not automatically forfeit all of their constitutionally protected freedoms upon entering a correctional facility.  See, <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979); <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  At the same time, "'[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in

incarceration,'" Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir. 1996), cert. denied, 519 U.S. 874 (1996), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977), and a prison inmate retains only those First Amendment rights not inconsistent with his status as a prisoner.  See, Jones v. North Carolina Prisoner's Labor Union, Inc., supra at 125.  The administration of a prison "requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government" which, even in the context of a constitutional challenge, raises "separation of powers concerns [that] counsel a policy of judicial restraint."  Turner v. Safley, 482 U.S. 78, 84-85 (1987).

When an inmate claims that prison officials have interfered with his constitutional right to exercise his religious beliefs, the Court must apply a "'reasonableness test,'" which is "'less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'"  Hamilton v. Schriro, supra at 1550, quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).  Prison officials need not show that they have chosen the least restrictive means of furthering a compelling governmental interest; they must only show that they have chosen a "reasonable" means of furthering a "'legitimate penological interest.'"  Id., quoting

Turner v. Safely, supra at 89; see also, Jolly v. Coughlin, 76 F.3d 468, 475 (2d Cir. 1996)("[T]he O'Lone 'reasonableness' test continues to have validity for claims brought directly under the First Amendment."). "The burden, moreover, is not on the [Government] to prove the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

Although the Plaintiff alleges that his First Amendment rights have been violated by the Defendants, in his Complaint he has not identified a specific cause of action for this alleged violation. Interpreting his pleadings generously, we understand him to argue that the observance of his Catholic faith requires that he honor his mother, and that the Defendants have unreasonably prevented him from satisfying that requirement by refusing to transfer him to a facility that is located within 500 miles of his mother's residence, thereby preventing him from engaging in face to face visitations.

In order to present a valid First Amendment claim, the Plaintiff has the burden of establishing that the alleged religious belief in question – here, the ability to honor his mother -- is based on a teaching of the Catholic faith, that his belief in that teaching is sincerely held, and that the governmental action in question actually infringes upon his free exercise of that belief. See, Goff v. Graves, 362 F.3d 543, 547

- 17 -

(8th Cir. 2004), citing Hamilton v. Schriro, supra at 1550; Weir v. Nix, 114 F.3d 817,

820 (8th Cir. 1997).  In his Complaint, which was verified under penalty of perjury, the

Plaintiff alleges that "[m]aintaining and developing the relationships that form the

family unit is a primary tenet of the Catholic faith," and notes that "[t]he primary

source of the Catholic Church's doctrine relative to the institution of the family is the

Fourth Commandment: 'Honor your father and your mother, that your days may be

long in the land which the Lord your God gives you.'"  Complaint, supra at p. 6, ¶¶28-

30.

Interpreting the pleadings in a light most favorable to the Plaintiff, as we must

in this procedural context, we accept, without deciding, that the Plaintiff's religious

beliefs require him to give "honor, affection, and gratitude toward elders and

ancestors," id., and for these purposes, we also accept the sincerity of the Plaintiff's

beliefs.[3]  To find that the Plaintiff has alleged a First Amendment violation, which

survives the Defendants' Motion, however, we must also find that the Defendants'

---

[3]Although the Plaintiff attests that both he, and his mother, are "devout Catholics," Complaint, supra at p. 6, ¶26, as recently as May of 2003, on his Request for Transfer Form, he listed his religion as "Protestant."  See, Docket No. 21-4, Attachment B.

refusal to transfer him to FCI-Milan actually infringes upon his ability to honor his mother, and thus, violates a sincerely held belief that stems from his Catholic faith.

Although, in his Complaint, the Plaintiff quotes extensively from the Catholic Church's Catechism, he has nowhere alleged that the practice of the Catholic faith requires face to face visits in order to fulfill a Catholic's duty to honor members of his or her family. Instead, the Plaintiff presents an extended theoretical chain, beginning with his assertion, which we accept as true, that Catholics regard the maintenance of family relationships as a primary tenet of their faith, and then postulating that "[t]he maintenance of any human relationship, including a healthy family, requires the ability to visit each other in person." Complaint, supra at p. 7, ¶33. The sentiment, that healthy human relationships require personal visitations, is not ascribed to the teachings of the Catholic Church, but clearly has its origins in the opinions of the Plaintiff himself. In considering a Motion to Dismiss, or for Summary Judgment, "the Court need not consider conclusory allegations or blindly accept the legal conclusions drawn by the plaintiff." Hastings v. Wilson, 2007 WL 333617 at *2 (D. Minn., February 1, 2007), citing Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); Quinn v. Ocwin Federal Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006); Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999). We

- 19 -

find that, on the face of his pleading, the Plaintiff has not alleged facts that would show that his desire to receive face to face visitations with his mother, or with any member of his family, is based upon tenets of his Catholic faith.

Even if we were to find otherwise, the Plaintiff has failed to show that he is currently prevented from visiting with his mother face to face. Nothing in his Complaint suggests that the Plaintiff is required to visit with his mother with a certain frequency, and he admits, in his Complaint that his mother, along with other members of his family, has been able to personally visit him at FCI-Sandstone in the past. See, Complaint, supra at p. 7, ¶36. Since her visit to FCI-Sandstone in 2004, the Plaintiff's mother has suffered several serious, and distressing ailments, that could well prevent her from making the trip from her home, in Indiana, to FCI-Sandstone on her own, id. at p. 9, ¶45, but the Plaintiff has not claimed that other family members, or friends, could not assist her to make future visits. Therefore, the Plaintiff has not pled facts that would allow us to find that his current incarceration at FCI-Sandstone violates his First Amendment right to practice his religion.[4]

---

[4]With equally compelling logic, the Plaintiff could well argue that visiting with his mother in a confined prison environment, where he and his visitors are being monitored by prison staff, warrants his release, on religious grounds, in order that his honor for his mother could be practiced without restraint, and the potential for
(continued...)

Finally, even if we were to find that the Plaintiff had established that his continued incarceration at FCI-Sandstone burdened his ability to practice his Catholic faith, the Defendants argue that the BOP's refusal to transfer him to FCI-Milan is reasonably related to the legitimate penological interests of prison management, and the burden remains on the Plaintiff to refute that claim.  See, O'Lone, supra at 348. Instead, the Plaintiff concedes that the "BOP has a legitimate compelling governmental interest in housing [the Plaintiff] in an institution commensurate with his security classification." Complaint, at p. 13, ¶62.  Where, as here, "other avenues" besides face to face visitation remain available for the exercise of the Plaintiff's Catholic faith, "courts should be particularly conscious of the 'measure of judicial deference owed to correction officials.'"  Turner v. Safley, supra at 90, quoting Pell v. Procunier, supra at 827.   In this case, the Plaintiff has not made any showing that the Defendants' refusal to allow him to transfer to FCI-Milan was not reasonably related to a legitimate penological interest, see, McClinton v. Arkansas Dept. of

---

[4](...continued)
embarrassment, that might arise from a prison setting.  In any event, we see no real restriction upon faithfully honoring one's parents by personal visitations, that is not reasonably satisfied by communications in writing, and by telephonic means.  More importantly, the Plaintiff advances no Catholic teachings to the contrary.

Correction, 166 Fed.Appx. 260, 260-61 (8th Cir. 2006), and has not satisfied his burden in pleading a claim under the First Amendment.[5]

        b.    <u>The Fifth Amendment Claim</u>.  It is well-settled that, with regard to prison transfers, prisoners have no constitutional entitlement to invoke due process claims, see, <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976), and a prisoner has no constitutional right to placement in a particular penal institution. See, <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245-48 (1983); <u>Prows v. Federal Bureau of Prisons</u>, 981 F.2d 466, 469 n.3 (10th Cir. 1992), cert. denied, 510 U.S. 830 (1993).  Transfer and prison assignments are exclusively delegated to the discretion of the BOP, see, <u>Olim v. Wakinekona</u>, supra at 238; <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976); <u>Peck v. Hoff</u>, 660 F.2d 371, 373 (8th Cir. 1991), and the BOP "has the discretion to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all."  <u>Brown-Bey v. United States</u>, 720 F.2d 467, 470

---

    [5]Although the Plaintiff's First Amendment claims appear to be rooted in his religious freedom claim, to the extent that he should consider his claim as alleging a violation of his freedom of association, we note that such a claim also fails, as prisoners possess no constitutional right to visitation.  See, <u>Overton v. Bazzetta</u>, 539 U.S. 126 (2003)("[F]reedom of association is among the rights least compatible with incarceration."); <u>Ky. Dept. of Corr. v. Thompson</u>, 490 U.S. 454, 460-61 (1989); <u>Ware v. Morrison</u>, 276 F.3d 385, 387 (8th Cir. 2002); <u>Harmon v. Auger</u>, 768 F.2d 270, 272 (8th Cir. 1985).

(1983).  Therefore, the BOP is authorized to place inmates in "any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] * * * that the [BOP] determines to be appropriate and suitable."   Title 18 U.S.C. §3621(b).  Courts should defer to the judgment of BOP officials unless there is substantial evidence in the record justifying overturning of their decisions.  See, Bell v. Wolfish, supra at 539.

The BOP maintains a policy on designating and redesignating inmates, Program Statement 5100.07 ("P.S. 5100.07"), that is set out in a Security Designation and Custody Classification Manual ("Manual").  See, Docket No. 21-5.  Chapter 10 of the Manual concerns Inmate Transfer, and establishes the procedure for routine transfers of inmates as follows:

> Redesignation of an inmate should generally result in a move closer to an inmate's release destination, consistent with the inmate's security level.  **In order to attempt to place an inmate near his or her release residence, redesignations should be made without regard to regional boundaries.  ORDINARILY, THE INMATE MAY BE CONSIDERED FOR A NEARER RELEASE TRANSFER AFTER SERVING 18 MONTHS WITHIN THE FACILITY WITH CLEAR CONDUCT**.
>
> Redesignations between same security level institutions are discouraged, except for CIM purposes, closer to home purposes, or other unusual circumstances.  A "nearer to

- 23 -

> release" transfer should be incorporated with "lesser
> security" transfers whenever possible. Once the inmate has
> been transferred within 500 miles of his or her release
> residence, no further referrals should be made as a "nearer
> to release" transfer consideration.

See, <u>Docket No. 21-5</u> [emphasis original].

The Plaintiff alleges that he has been denied Due Process of law by the failure of the

BOP to abide by its own regulations, that establish the protocol for routine transfers.

In this respect, he argues that the application of P.S. 5100.07 is non-discretionary relative to "nearer release" transfers. Although he admits that he has already been subject to one "nearer release" transfer -- from FCI-Florence to FCI-Sandstone -- the Plaintiff claims that, because the formula used by the BOP to determine distance is flawed, his current assignment to FCI-Sandstone is not within the required 500 miles of his final release destination, and so he remains eligible for an additional "nearer release" transfer to bring him within that non-discretionary limit. See, <u>Complaint</u>, supra at p. 15, ¶74.

A prisoner has no Federal constitutional liberty interest in having prison officials follow prison regulations, see, <u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003), and any allegation, that the Defendants failed to follow prison regulations, does not, in and of itself, state a claim. See, <u>Bonner v. Federal Bureau of Prisons</u>, 196 Fed.

Appx. 447, 448 (8th Cir. 2006)(prisoner failed to state constitutional claim when he did not challenge constitutionality of prison regulations, but only manner in which they were followed by prison officials); <u>McClinton v. Arkansas Dept. of Correction</u>, supra at 260-61 ("[A]ny contention that defendants failed to follow prison policy does not by itself state a claim."), citing <u>Kennedy v. Blankenship</u>, 100 F.3d 640, 643 (8th Cir. 1996). Thus, to the extent that the Plaintiff argues that the Defendants have failed to follow assertedly "non-discretionary" BOP rules, the Plaintiff has failed to state a Due Process violation.

Nor has the Plaintiff stated a cognizable claim challenging the constitutionality of the BOP regulations themselves. Indeed, the only flaw the Plaintiff identifies in the BOP regulations is that the zip code to zip code mechanism, that is employed by the BOP to calculate distances, occasionally results in prisoners being housed farther from their homes than 500 miles, in terms of actual travel distances. Such a contention also fails to state a constitutional claim, as prisoners have no right to be housed in any particular prison, and it would not be unconstitutional to house prisoners farther than 500 miles from their ultimate release location. See, <u>Armendariz-Mata v. Lappin</u>, 157 Fed.Appx. 767, 768 (5th Cir. 2005)(affirming dismissal of <u>Bivens</u> action for failure to state a claim where prisoner alleged that his due process rights were violated when his

request for transfer to a prison facility closer to his family was denied); <u>Brown-Bey v. United States</u>, supra at 470 (if petitioner "wants to be transferred closer to his family and friends, he fails to state a cognizable federal claim".).[6] Accordingly, we find that the Plaintiff has failed to plead a violation of his rights under the Fifth Amendment, and we recommend that this claim be dismissed.

---

[6]The Plaintiff also argues that the Defendants have failed to consider him for a "closer to home" transfer which, he claims, is distinct from a "nearer release" transfer. Although, for reasons we have already detailed, such an assertion fails to state a constitutional claim, we note that Courts, which have considered the argument, have found that those were the same type of transfer, and that "closer to home" claims did not merit a separate analysis. See, <u>Ganim v. Federal Bureau of Prisons</u>, 2006 WL 2224348 at *3-4 (D.N.J., July 31, 2006); <u>Ortega v. Maynard</u>, 2006 WL 1877016 at *1 (E.D. Ky., July 6, 2006); <u>Cruz v. Barada</u>, 2006 WL 276938 at *2-3 (E.D. Ky., February 3, 2006); <u>Antonelli v. Sanders</u>, 2006 WL 667964 at *2-3 (E.D. Ark., March 15, 2006).

Similarly, the Plaintiff has not shown that he is eligible for an "unusual circumstances" transfer. In <u>Rivera v. Federal Bureau of Prisons</u>, 197 Fed.Appx. 169, 170 (3d Cir. 2006), the Court of Appeals for the Third Circuit considered the claim of a prisoner who had already been transferred to within 500 miles of his release destination, but argued that he should be retransferred based on unusual circumstances, as his mother suffered from many physical disabilities, and found it difficult to travel to visit him at his current facility. The Court rejected the prisoner's argument, noting that prisoners have no liberty interest in being assigned to the facility of their choice, and specifically rejecting the prisoner's argument that the BOP Program Statement created a cognizable liberty interest. <u>Id.</u> at 170-72, citing <u>Sandin v. Conner</u>, 515 U.S. 472, 481-82 (1995).

3.      Qualified Immunity.  Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  See, Wilson v. Layne, 526 U.S. 603, 609 (1999); Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).  "To withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable officer would have known that alleged action indeed violated that right."  Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999); see also, Young v. Harrison, supra at 866-67.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken."  Wilson v. Layne, supra at 614.  The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say

that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

We have already determined that the Plaintiff did not effectuate service against the Defendants in their individual capacities, and so find ourselves without jurisdiction over them. Additionally, we have concluded that the Defendants' treatment of the Plaintiff did not violate the Constitution, and even if they had, the Defendants are clearly entitled to qualified immunity, as the unlawfulness of that treatment was far from apparent. See, Logan v. Clarke, 119 F.3d 647, 649-650 (8th Cir. 1997); Camberos v. Branstad, 73 F.3d 174, 177 (8th Cir. 1995); Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). Accordingly, the Defendants' Motion to Dismiss is also warranted by the doctrine of qualified immunity.

C.   The Plaintiff's RLUIPA Claims. Lastly, the Plaintiff alleges that the Defendants' failure to transfer him to FCI-Milan violates RLUIPA, Title 42 U.S.C. §2000cc-1, by substantially burdening his ability to visit with his mother, as an

- 28 -

element of the practice of his religion.[7]  The Defendants counter that the Court does

not have jurisdiction to hear the Plaintiff's RLUIPA claim, as RLUIPA does not apply

to Federal prison inmates.

RLUIPA was enacted in 2000 to resurrect the language of the Religious

Freedom Restoration Act of 1993 ("RFRA"), Title 42 U.S.C. §2000bb-1, after the

Supreme Court determined, in City of Boerne v. Flores, 521 U.S. 507, 536 (1997), that

RFRA was unconstitutional, as applied to State and local governments.  See, Murphy

v. Missouri Dept. of Corrections, 372 F.3d 979, 987 (8th Cir. 2004).  As enacted,

"RLUIPA deals exclusively with state, rather than federal, prisons." Lovelace v. Lee,

472 F.3d 174, 217 (4th Cir. 2006), citing Turner, 482 U.S. at 85; see also, Madison v.

---

[7]RLUIPA provides, in relevant part, as follows:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an
> institution * * * even if the burden results from a rule of
> general applicability, unless the government demonstrates
> that imposition of the burden on that person –
>
> > (1)   is in furtherance of a compelling
> > governmental interest; and
> >
> > (2)   is the least restrictive means of furthering that
> > compelling governmental interest.

Title 42 U.S.C. §2000cc-1(a).

- 29 -

Virginia, 474 F.3d 118, *2  (4th Cir. 2006)(RLUIPA "prohibits the States from imposing substantial and unjustified burdens on the religious liberty of state prisoners."); Nelson v. Miller, 2007 WL 294276 at * 9 (S.D. Ill., January 30, 2007); Presley v. Edwards, 2007 WL 174153 at *13 (M.D. Ala., January 19, 2007).

However, the holding in City of Boerne v. Flores, supra, did not challenge the constitutionality of the RFRA as applied to the Federal government.  See, Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal, 546 U.S. 418, 126 S.Ct. 1211, 1216-17 (2006); Cutter v. Wilkinson, 544 U.S. 709, 715 n.2 (2005)("RFRA, Courts of Appeals have held, remains operative as to the Federal Government and federal territories and possessions."); In re Young, 141 F.3d 854, 856 (8th Cir. 1998)("RFRA is constitutional as applied to **federal law**.")[emphasis in original].  All of the parties and practices in the Plaintiff's claim are alleged against the Federal government, and therefore, given his pro se status, we are inclined read the Plaintiff's claim as brought under the RFRA, rather than RLUIPA.

The operative Section of the RFRA is nearly identical to its counterpart in RLUIPA, and provides as follows:

> (a)    In general.   Government shall not substantially burden a person's exercise of religion even if the burden

results from a rule of general applicability, except as provided in subsection (b) of this section.

(b)    Exception.  Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person --

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

Title 42 U.S.C. §2000bb-1.

"A person whose religious practices are burdened in violation of RFRA 'may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.'" Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal, supra at 1217, citing Title 42 U.S.C. §2000bb-1(c).

The purpose of the RFRA was to ensure greater religious freedom to all Americans, including prisoners.  See, Hamilton v. Schriro, supra at 1552.  The RFRA generally forbids the government from imposing any "substantial burden" on a person's ability to exercise his or her religious beliefs, unless the government can demonstrate that:  1) there is some "compelling governmental interest" at stake; and 2) the "least restrictive means" have been used to further that interest.  Id. at 1551-52.  The Supreme Court, in both Sherbert v. Verner, 374 U.S. 398, 403 (1963), and

<u>Wisconsin v. Yoder</u>, 406 U.S. 205, 205 (1972), in which Justices Brennan and Burger

formulated the antecedent to RFRA's standard, recognized, and distinguished, those

cases in which the Government's paramount interest was in preserving public safety,

peace, or order.

A person seeking to invoke the protections of the RFRA against governmental

action must, as an initial matter, "establish that the action substantially burdens his

sincerely held religious belief." <u>Weir v. Nix</u>, supra at 820; <u>Ochs v. Thalacker</u>, 90 F.3d

293, 296 (8th Cir. 1996).  Our Court of Appeals has extrapolated, from the RFRA,

what constitutes a "substantial burden" on free exercise rights, under the Act, as

follows:

> In order to be considered a "substantial" burden, the
> governmental action must 'significantly inhibit or constrain
> conduct or expression that manifests some central tenet of
> a [person's] individual [religious] beliefs; must
> meaningfully curtail a [person's] ability to express
> adherence to his or her faith; or must deny a [person]
> reasonable opportunities to engage in those activities that
> are fundamental to a [person's] religion.'

<u>Weir v. Nix</u>, supra at 820, quoting <u>In re Young</u>, supra at 1418, vacated on other
grounds <u>sub</u> <u>nom.</u> <u>Christians v. Crystal Evangelical Free Church</u>, 521 U.S. 1114
(1997), quoting, in turn, <u>Werner v. McCotter</u>, 49 F.3d 1476, 1480 (10th Cir. 1995).

"In 'substantial burden' determinations," as the text of the RFRA makes clear, "the

religious practice does not have to be mandated by the religion in order for the burden

to be found 'substantial'." Parks-El v. Fleming, 2007 WL 81748 at *2 (4th Cir.,
January 10, 2007)(term "religious exercise" includes "any exercise of religion,
whether or not compelled by, or central to, a system of religious belief"), citing Title
42 U.S.C. §2000cc-5(7)(A).

As we previously observed, in our discussion of the Plaintiff's claims under the
First Amendment, the Plaintiff concedes that the BOP has a legitimate compelling
interest in housing him in an institution commensurate with his security classification,
see, Complaint, supra at p. 13, ¶62, but argues that the interest is equally well served
by housing him at FCI-Milan, as at FCI-Sandstone, and that retaining him at FCI-
Sandstone imposes a substantial burden on his ability to exercise his ability to honor
his mother, in keeping with his beliefs as a Catholic.

In Pratt v. Corrections Corporation of America, 2006 WL 2375656 at *8-9 (D.
Minn., August 16, 2006), the Court considered a prisoner's claim that he was
substantially burdened in the practice of his Muslim religion because he was not
provided Halal, or "permissible" meat, in his meals.[8]  In that case, prison officials,

---

[8]Although Pratt v. Corrections Corporation of America, 2006 WL 2375656 at
*8-9 (D. Minn., August 16, 2006), was decided under RLUIPA, our Court of Appeals
has found that, because the language of the two statutes is so similar, and because they
were drafted with nearly identical goals, RFRA and RLUIPA cases can be looked to
(continued...)

who were faced with the challenge and expense of finding Halal meat on a regular basis, substituted vegetarian meals, which were also considered Halal within the meaning of Islamic law.  While not challenging the sincerity of the prisoner's faith, the Court denied the prisoner's claim that he should be provided meals containing Halal meat, noting that he had presented no evidence that prison officials had forced him to violate his beliefs by consuming non-permissible foods, and rejecting, as unsupported, the argument that he was required to consume Halal meat to fulfil his religious duties as a practicing Muslim.  See also, Watkins v. Shabazz, 180 Fed. Appx. 773, 775 (9th Cir. 2006)(same); DeHart v. Horn, 390 F.3d 262, 271-72 (3d Cir. 2004)(upholding dismissal of RLUIPA claim of Buddhist inmate who complained that prison officials did not provide him with a diet free from "pungent vegetables.").

In contrast, actions by prison officials that have been found to substantially burden a prisoner's religious beliefs include:  forcing a prisoner to pay for kosher meals, Thompson v. Vilsack, 328 F. Supp.2d 974, 980 (S.D. Iowa 2004); barring a prisoner from the prison chapel, and thus preventing him from performing communal prayer, Parks-El v. Fleming, supra at *2; denying a prisoner access to pre-dawn and

_____

[8](...continued)
for guidance in applying each other.  See, Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 987 (8th Cir. 2004).

post-sunset meals, and thus impeding his ability to fast during a religious holiday, <u>Lovelace v. Lee</u>, 472 F.3d 174, 187 (4th Cir. 2006); and forcing a prisoner to keep his hair cut short, in violation of his religious teachings, <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 996 (9th Cir. 2005).

Here, as in our previous analysis of the Plaintiff's First Amendment claims, we question whether the Plaintiff has pled a connection between his Catholic faith and his desire to visit face to face with his mother. However, even if we accept that the Plaintiff has included sufficient allegations for us to find that his sincerely-held religious beliefs require him to have face to face visits with his mother, the Plaintiff has not shown that the actions of the prison officials have substantially burdened that requirement. The Plaintiff does not claim that prison officials have barred his mother from visiting him, and he acknowledges that she has been able to visit him at FCI-Sandstone in the past.

Essentially, his argument is that, due to unfortunate circumstances, it is more difficult for his mother to visit him now than it was before her serious illnesses. However, as in <u>Pratt v. Corrections Corporation of America</u>, supra, we do not find that prison officials have made the Plaintiff do anything that is in violation of his religious beliefs, such as forbidding him to see his mother, nor have they done anything that has

forced the Plaintiff to change his religious observances, such as deliberately denying visitors on a special Sabbath day, or at some other time with potential religious significance. Nor does he allege that the Defendants have prevented him access to a Bible, to Catholic services, to confessional, or to any other tenet of the Catholic faith.

The remaining elements of the RFRA test also warrant a dismissal of the Defendants. As previously noted, the Plaintiff concedes that the Defendants have a compelling justification in prison management, and with that concession we agree. Prison security and discipline is widely recognized as a compelling interest, see, Cutter v. Wilkinson, supra at 725 n.13; Johnson v. California, 543 U.S. 499, 500 (2005); Murphy v. Missouri Dept. of Corrections, supra at 982, and here the BOP is specifically granted exclusive authority over the transfer of inmates, based upon the legitimate danger to the safety of the public, as well as to the prison population, inherent with transferring prisoners. The alternative solution, which is fostered by the Plaintiff, that he be transferred to FCI-Milan, does not address those concerns, nor does it assure prison officials that the Plaintiff will be satisfied after his transfer there. "[G]iving appropriate deference to the decisions of prison [officials]," Hill v. Blackwell, 774 F.2d 338, 343 (8th Cir. 1985), citing Jones v. North Carolina Prisoners' Labor Union, Inc., supra at 125, we find that the alternative suggested by the Plaintiff

does not reasonably accomplish the same goals effected by the present BOP regulations, which discourage transfers between same security level institutions.

We recognize that "Courts must be cautious in attempting to separate real from fictitious religious beliefs," Ochs v. Thalacker, supra at 296, citing Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 713-16 (1981), and we do not make any judgments on the religious beliefs of the Plaintiff, nor do not disparage the sincerity of the Plaintiff's belief that his religion calls on him to honor his mother. Rather, we simply conclude that his ability to honor his mother has not been substantially burdened by the actions of the Defendants, here, which are rooted in compelling concerns of public and institutional safety, and therefore, we recommend that the Defendants' Motion to Dismiss, as construed as a Motion for Summary Judgment, be granted as to the Plaintiff's RFRA/RLUIPA claim.[9]

---

[9]The Plaintiff is mistaken in arguing that the survival of his RLUIPA claim, after our initial screening of his Complaint, serves to establish its validity as a matter of law.  In screening a prisoner's Complaint under Title 28 U.S.C. §1915A, the Court does not make a determination of the merits of each claim, but merely examines the face of the Complaint to see if it is frivolous or malicious, fails a state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief.  "A district court may strongly suspect that an inmate's claims lack merit, but that is not a legitimate ground for dismissal under §1915A." Vasquez v. Frank, 2006 WL 3623044 at *1 (7th Cir., December 13, 2006), citing Simpson v. Nickel, 450 F.3d 303, 307 (7th Cir. 2006).  Thus, our prior determination, that the
(continued...)

In sum, we recommend that the Defendants' Motion for Summary Judgment be granted.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion to Dismiss, or for Summary Judgment [Docket No. 19] be granted.

Dated: February 20, 2007          s/Raymond L. Erickson
                                  Raymond L. Erickson
                                  CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 9, 2007,** a writing which specifically identifies those portions of the Report to

---

[9](...continued)
Plaintiff's Complaint was not frivolous, has no bearing on our evaluation of its merits particularly where, as here, the Record has been more fully developed by sworn attestations.

which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 9, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.